IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN RIOS, | ) | CASE NO. 3:14 CV 2462 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| NORM ROBINSON, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

### Introduction

Before me[1] is the petition of Steven Rios for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Rios was convicted by a Williams County Common Pleas Court jury in 2012 of three counts of rape with a Tier III sex offender classification[3] and is serving an aggregate term of 40 years to a maximum of life in prison.[4]  He is currently incarcerated at the Chillicothe Correctional Institute in Chillicothe, Ohio.[5]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Benita Y. Pearson by non-document order dated November 25, 2014.

[2] ECF # 11; *see* 28 U.S.C. 2254 (2012).

[3] ECF #8-1 at 26.

[4] *Id*. at 27.

[5] Ohio Department of Corrections www.drc.ohio.gov/offendersearch.

Rios raises four grounds for habeas relief.[6] The State, in its return of the writ contends that Grounds One, Two, and Three should be determined on the merits, and Ground Four dismissed as a non-cognizable claim.[7] Rios has filed a traverse.[8]

For the reasons that follow, I will recommend Rios's petition be dismissed in part and denied in part.

## Facts

### A.     Underlying facts, conviction, and sentence

The relevant facts found by the Ohio appeals court emerge from its review of the record.[9]

On August 12, 2010, then nine year old C.N. was brought to the emergency room by her mother with complaints of vaginal bleeding.[10] The mother told the physician that she believed her daughter might be experiencing an early onset of puberty.[11]  The physician examined the girl and found she exhibited no other traits associated with the onset of puberty.[12] Nor could he find anything to explain the bleeding and irritation of which she

---

[6] ECF #11.

[7] ECF #7.

[8] ECF #12.

[9] ECF 8-5 at 566.

[10] *Id.* at 567.

[11] *Id.*

[12] *Id*.

complained.[13] On suspicion that C.N. might be the victim of child abuse, the physician reported the matter to the Williams County Department of Job and Family Services.[14]

Sometime later, a child abuse investigator visited the school where C.N. and her 11 year old brother, T.N., attended.  The investigator conducted an interview with both children, which resulted in the immediate removal of the children from the home and placement in foster care.[15]

C.N later testified at trial that, while her mother worked, she was sometimes left in the care of her mother's boyfriend, Steven Rios.[16]  During one such occasion, C.N. testified that Rios undressed the girl and inserted his "boy part" into her "girl part."[17] The girl reported that "it hurt" and caused bleeding.[18] Another time, "He stuck his boy part in, or in my mouth." [sic][19] C.N. was examined by a physician, Dr. Randall Schlievert, who specializes in child

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

abuse.[20] Based on his examination, the emergency room report, and his interview with the child, Dr. Schlievert diagnosed C.N. as a victim of sexual abuse.[21]

T.N. testified that on multiple occasions that Rios "would make me suck his talliwacker."[22]  Both children testified that Rios threatened to harm them if they told anyone.[23] Even so, according to C.N., she told her mother, the result of which was the 2010 trip to the emergency room.[24]

On February 15, 2012, Rios was named in a three count indictment handed down by the Williams County Grand Jury.[25]  The indictment charged three counts of rape of a child under age 13, with a specification on two of the counts that the victim was under the age of 10.[26]  Rios pled not guilty and the matter proceeded to a trial before a jury.[27]

At trial, C.N. and T.N. both testified, as did the emergency room physician, the child abuse expert, and his assistant.[28]  Rios rested without presenting any evidence.[29]

---

[20] *Id*.

[21] *Id*. at 568-569.

[22] *Id*. at 569.

[23] *Id*.

[24] *Id*.

[25] *Id*.

[26] *Id*.

[27] *Id*.

[28] *Id*.

[29] *Id*.

The jury found Rios guilty of all counts and specifications.[30]  The court accepted the verdict and, on December 13, 2012, sentenced Rios to mandatory indefinite terms of imprisonment of 15 years to life on two counts and from 10 year to life on the third count.[31] The court ordered the terms of imprisonment to be served consecutively.[32]

**B.     Direct appeal**

*1.     Ohio Court of Appeals*

Rios, through counsel filed a timely[33] notice of appeal[34] with the Ohio Court of Appeals.  On February 8, 2013 the appeals court dismissed the notice of appeal, finding that December 31, 2012, judgment ordered Rios "to pay restitution" but did not determine the actual amount of restitution to be imposed.[35] Thus the judgment of conviction was not a final appealable order because it failed to determine the amount of restitution.[36]

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33]  Under Ohio App. R. 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed.  See , *Smith v. Konteh*, No. 3:04CV7456,  2007 WL 171978, at *2 (N.D. Ohio Jan.18, 2007) (unreported case). Rios's conviction and sentence were journalized on December 31, 2012. *(Id.* at 25), and his appeal to the Ohio court of appeals was filed on January 30, 2013.

[34] *Id.* at 495.

[35] *Id.* at 506.

[36] *Id.*

-5-

On March 18, 2013, the trial court issued a *nunc pro tunc* sentencing entry deleting any reference to the payment of restitution.[37]

Rios, through counsel, again filed a timely[38] notice of appeal[39] with the Ohio court of appeals.  In his brief, Rios raised the following three (3) assignments of error:

1.    The trial court abused its discretion by permitting expert testimony by Randall Schlievert.

2.    The diagnosis by Appellee"s expert was an inadmissable and prejudicial opinion of the veracity of appellant's child accuser.

3.    The trial court abused its discretion by permitting witnesses to repeat the child accuser's out of court statements.

The state filed a response to Rios's brief.[40]  On January 31, 2014, the Ohio Court of Appeals overruled Rios's assignments of error and affirmed the judgment of the trial court.[41]

---

[37] *Id*. at 509.

[38] Rios's conviction and sentence were journalized on December 31, 2012 (*Id*. at 25) and March 18, 2013. *(Id.* at 509), and his appeal to the Ohio court of appeals was filed on April 4, 2013.

[39] *Id*. at 517.

[40] *Id*. at 548.

[41] *Id.* at 566.

## 2.    *Supreme Court of Ohio*

Rios, *pro se*, thereupon filed a timely[42] notice of appeal with the Ohio Supreme

Court.[43] In his memorandum in support of jurisdiction, Rios raised the following five (5)

propositions of law:

1.    The Ohio State Courts erred and abused their discretion by permitting
      the alleged expert testimony by Dr. Randall Schlievert; as it was not an
      expert opinion given with any degree of medical certainty, probability
      or possibility;  but used to sustain Appellant's convictions.

2.    The Ohio State Courts erred and abused their discretion by allowing the
      diagnosis by Appellee's alleged expert; which was an inadmissable and
      prejudicial opinion of the [veracity][*sic*] of Appellant's child accuser
      and denied him a fair trial and due process of law, in violation of the
      Fifth, Sixth, and Fourteenth Amendments to the United States
      Constitution and under Article 1, Sections 10, 15 and 16 of the Ohio
      Constitution.

3.    The Ohio State Courts erred and abused their discretion by permitting
      witnesses to repeat improper hearsay; and thus denied Appellant a fair
      trial and due process of law, in violation of the Fifth, Sixth and
      Fourteenth Amendments to the United States Constitution and under
      Article 1, Sections 10, 15 and 16 of the Ohio Constitution.

4.    The Appellant's judgment of conviction on all three counts of rape was
      not supported by sufficient evidence and was against the manifest
      weight of the evidence.

---

[42] *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *See*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case). Here, the appellate judgment was entered on January 31, 2014, and the notice of appeal filed in the Supreme Court on March 13, 2014.

[43] *Id*. at 579.

5.      The Ohio State Courts erred as a matter of law and denied Appellant a
        fair trial and due process of law by allowing the ineffective assistance
        of counsel to be ignored at both trial and the appellate levels.

On June 11, 2014, the Ohio Supreme Court declined to accept jurisdiction of the

appeal under S.Ct.Prac.R. 7.08(B)(4).[44]

## C.     Federal habeas corpus petition

On October 29, 2014, Rios, pro se, timely filed[45] a federal petition for habeas relief[46]

In his petition, Rios raises four (4) grounds for relief:

GROUND ONE:      THE TRIAL COURT ABUSED ITS DISCRETION BY
                 PERMITTING   EXPERT   TESTIMONY   BY   DR.
                 RANDALL SCHIEVERT.

Supporting Facts:   Dr. Schlievert's expert "proffer" was not an opinion.  It
                    was based upon medical certainty, probability or
                    possibility. Dr. Schievert's diagnosis was based only on
                    the victim's statements and speculative of what was said
                    to the authority and written in the police report.
                    Therefore, according to Dr. Schievert, his medical
                    examination and diagnosis of sexual abuse and rape was
                    based upon the victim's words, symptoms and behavior,
                    but no symptoms or behavior indicated any sexual abuse,
                    etc.

---

[44] *Id*. at 612.

[45] The present petition for federal habeas relief was filed on October 29, 2014 when
Rios placed the petition in the prison mail system (ECF #11 at 15).  The petition was
originally filed in the Southern District of Ohio (Case No. 2:14 CV 2160). The case was
transferred to this district court on November 6, 2014 and assigned the present Case No. 3:14
CV 2462. As such, it was filed withing the one year conclusion of Rios' direct appeal in the
Ohio courts and so it is timely under 28 U.S.C. § 2254(d)(1).

[46] ECF #11.

GROUND TWO:     THE DIAGNOSIS BY APPELLEE'S EXPERT WAS
                AN INADMISSABLE AND PREJUDICIAL OPINION
                OF THE VERACITY OF APPELLANT'S CHILD
                ACCUSER.

Supporting Facts:   The state presented the testimony of Dr. Powell, who
                    interviewed and examined the victim.   During his
                    testimony, Dr. Powell, opined that, based upon a
                    reasonable medical certainty, the victim had been
                    sexually abused, but that his conclusion was based on
                    "her physical examination and the history that she told
                    him things.   The medical examination of the victim
                    provided no evidence of the alleged sexual abuse.  After
                    reviewing the state's evidence, the court found that the
                    admission of the expert's opinion constituted reversible
                    error because the case was a "credibility contest"
                    between the victim and the defendant with the absence of
                    independent evidence of the abuse, including no medical
                    evidence of abuse.

GROUND THREE:   THE TRIAL COURT ABUSED ITS DISCRETION BY
                PERMITTING WITNESSES TO REPEAT THE CHILD
                ACCUSER'S OUT OF COURTS STATEMENTS.

Supporting Facts:   According to Kim Jones, the St. V's Hospital coordinator
                    of the child abuse services, it was her duty to conduct the
                    interview of Chelsea. The statements made by Chelsea at
                    the interview were the ones repeated by Ms. Jones and
                    Dr. Schievert at trial. There is no indication that the
                    statements made by Chelsea were for medical diagnosis
                    or treatment. The only evidence presented on the matter
                    was when Ms. Jones testified.

GROUND FOUR:    THE OHIO SUPREME COURT ERRED AS A
                MATTER OF LAW, WHEN DENYING
                APPELLANT'S MOTION TO RAISE AND PRESENT
                HIS CLAIM OF APPELLATE COUNSEL
                INEFFECTIVE.

Supporting Facts:   Appellant was deprived of his due process of law when
                    the Ohio Supreme Court denied his claims of his

appellate counsel's ineffectiveness for failing to raise on appeal, issue and error, effecting appellant's trial, and on appeal, resulting in a conviction and appellant's appeal being denied.

## Analysis

### A.   Preliminary observations

Before proceeding further, I make the following preliminary observations:

1.     There is no dispute that Rios is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[47]

2.     There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[48]

3.     In addition, Rios states,[49] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[50]

4.     Moreover, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[51]

---

[47] *See* 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[48] *See* 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (2000).

[49] ECF # 11 at 3.

[50] *See* 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (2006).

[51] *See* 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

5.      Finally, Rios has not requested the appointment of counsel,[52] but has requested an evidentiary hearing to develop the factual bases of his claims.[53] This motion[54] has been addressed separately.[55]

**B.      Standards of review**

*1.      AEDPA review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[56]codified at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas corpus.[57]  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.[58]

---

[52] *See* 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[53] *See* 28 U.S.C. § 2254(e)(2).

[54] ECF #12.

[55] ECF #13.

[56] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[57]  *See* 28 U.S.C. § 2254 (2012).

[58]  28 U.S.C. § 2254(d) (2012).

The Supreme Court teaches that this standard for review is indeed both "highly deferential" to state court determinations,[59] and  "difficult to meet,"[60] thus, preventing petitioner and federal court alike "from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."[61]

a.      "Contrary to" or "unreasonable application of" clearly established federal law

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[62]   In this context, there are two ways that a state court decision can be "contrary to" clearly established federal law:[63]  (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case,[64] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[65]  A state court's decision does not rise to the level of being "contrary to" clearly

---

[59] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[60] *Id.* (citation omitted).

[61] *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

[62] *Howes v. Fields*, 132 S.Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[63]  *Brumfield v. Cain*, 135 S.Ct. 2269, 2293 (2015).

[64]  *Id.*

[65]  *Id.*

established federal law simply because that court did not cite the Supreme Court.[66] The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[67] Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[68] When no such Supreme Court holding exists the federal habeas court must deny the petition.

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule, but applies it unreasonably to the facts of the petitioner's case.[69] Whether the state court unreasonably applied the governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[70] A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[71] To show that a state court decision is an unreasonable application, a petitioner must show that the state court ruling on the claim being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

---

[66] *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[67] *Id.*

[68] *See id.*

[69] *White v. Woodall*, 134 S.Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

[70] *Id.*(quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003).

[71] *Id.*

disagreement."[72] Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.

b.    *"Unreasonable determination" of the facts*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[73]  Under § 2254(e)(1), "a determination of a factual issue made by a [s]tate court shall be presumed to be correct."[74] A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[75] While such deference to state court determinations does not amount to an "abandonment or abdication of judicial review" or "by definition preclude relief,"[76] it is indeed a difficult standard to meet.  "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual

---

[72] *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

[73] *Brumfield*, 135 S.Ct. at 2277.

[74] 28 U.S.C. § 2254(e)(1) (2012).

[75] *Brumfield*, 135 S.Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010).

[76] *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

findings and to substitute its own opinions for the determination made on the scene by the trial judges."[77]

## 2.    *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody in violation of federal law.[78] Accordingly, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[79]  In such circumstances, a claim for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[80]

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial.[81] The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness" of a trial.[82]  Specifically, such violations are restricted to offenses

---

[77] *Davis v. Ayala*, 135 S.Ct. 2187, 2202 (2015) (citation omitted).

[78] 28 U.S.C. § 2254(a).

[79] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[80] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[81] *Estelle*, 502 U.S. at 67-68.

[82] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[83]

The petitioner bears the burden of showing a violation of a principle of fundamental fairness.[84] In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[85] and may not second-guess a state court's interpretation of its own procedural rules.[86] Further, while in general distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[87] the Sixth Circuit has recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[88]

### 3.    *Procedural default*

A claim not adjudicated on the merits by a state court is not subject to AEDPA review.[89]  Such a claim is subject to procedural default if a petitioner failed to raise it when state court remedies were still available, the petitioner violated a state procedural rule.[90]  The

---

[83] *Id*. at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[84] *Id.*

[85] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[86] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[87] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

[88] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[89] *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[90] *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

petitioner must afford the state courts "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[91]  This requires a petitioner to go through "one complete round" of the state's appellate review process,[92]  presenting his or her claim to "*each* appropriate state court."[93]  A petitioner may not seek habeas relief then if he or she does not first "fairly present[] the substance of his [or her] federal habeas corpus claim to the state courts."[94]

When a state asserts a that violation of a state procedural rule is the basis for default in a federal habeas proceeding, the Sixth Circuit has long employed a four-part to test determine whether the claim is procedurally defaulted.[95]  A petitioner's violation of a state procedural rule will bar federal review if the state procedural rule satisfies the standards set out in the test:[96]

(1) "[T]here must be a state procedure in place that the petitioner failed to follow."[97]

---

[91] *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citation omitted).

[92] *Boerckel*, 526 U.S. at 845.

[93] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (emphasis added).

[94] *West*, 790 F.3d at 697 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971) (internal quotation marks omitted).

[95] *See Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986) (outlining four-part test); *see Landrum v. Mitchell*, 625 F.3d 905, 916-17 (6th Cir. 2010) (applying test post-AEDPA).

[96] *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008).

[97] *Id.* (citing *Maupin*, 785 F.2d at 138).

(2) "[T]he state court must have denied consideration of the petitioner's claim on the ground of the state procedural default."[98]

(3) "[T]he state procedural rule must be an 'adequate and independent state ground,'[99] that is both 'firmly established and regularly followed.'"[100]

(4) The petitioner cannot demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "that failure to consider the claims will result in a fundamental miscarriage of justice."[101]

In order to show "cause" for the default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[102]  In order to show "prejudice" for the default, the petitioner must show that the errors at trial "worked to [his or her] *actual* and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."[103]

Additionally, "a credible showing of actual innocense" may also excuse an otherwise defaulted claim, and effectively allow a petitioner to seek review.[104]

---

[98] *Id.* (citing *Maupin*, 785 F.2d at 138).

[99] *Id.* (quoting *Maupin*, 785 F.2d at 138). ("A state procedural rule is an independent ground when it does not rely on federal law.") (citing *Coleman v. Thompson*, 501 U.S. 722, 732).

[100] *Id.* (citation omitted).

[101] *Id.* (quoting *Coleman*, 501 U.S. at 750).

[102] *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[103] *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

[104] *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013); *see Schulp v. Delo*, 513 U.S. 298, 324 (1995) (explaining that a "credible" claim requires "new reliable evidence" and factual innocence beyond legal insufficiency).

Notwithstanding these elements, the Supreme Court has held that a federal habeas court need not consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[105]

## C.     Application of standards

### 1. Ground Four-alleging that the Supreme Court of Ohio erred in declining to accept jurisdiction over Rios' direct appeal - should be dismissed as non-cognizable.

This claim appears to arise from a misunderstanding of what the Ohio Supreme Court's denial of jurisdiction means for the responsibility of a petitioner to fully exhaust his state remedies. Specifically, in his traverse Rios claims that he was denied the opportunity to exhaust his claims, and so experienced a procedural default, when the Supreme Court of Ohio declined to accept jurisdiction over his direct appeal.[106]

But the State does not claim any procedural default here, and in fact concedes that the other three grounds for relief have been adjudicated on the merits in the state court.[107] Rather, the State simply argues that because Ground Four only objects to a discretionary action of a state court, it is therefore noncognizable in the federal habeas proceeding.[108]

---

[105] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) ("[O]n occasion [the Sixth Circuit] has reached beyond the procedural-default analysis to address the underlying claim on the merits when it presents a more straightforward ground for decision.") (citation omitted).

[106] ECF # 12 at 7-8.

[107] ECF # 7 at 9.

[108] *Id.* at 30.

The State bases its conclusion on Ohio Supreme Court Rule of Practice 7.08, which, *inter alia,* permits the Ohio Supreme Court to decline to accept jurisdiction over an appeal upon reaching any one of the following four conclusions:

 (a) the appeal does not involve a substantial constitutional question and should be dismissed;

 (b) the appeal does not involve a question of great general or public interest;

 (c) the appeal does not involve a felony;

 (d) the appeal does involve a felony, but leave to appeal is not warranted.[109]

In any of the four instances, the decision of the Ohio Supreme Court to decline to accept jurisdiction in a discretionary appeal has the effect of exhausting any claim so presented and thereby foreclosing any procedural default argument, although the Ohio Supreme Court will not have ruled on the merits of the claim.[110] Such a discretionary action by a state court does not state a cognizable federal habeas claim.[111]

Accordingly, Ground Four should be dismissed as a non-cognizable claim.

---

[109] Ohio S. Ct.Prac. R. 7.08(B)(4).

[110] *See, Kvasne v. Collins,* 2010 WL 3210946, at *1 (N.D. Ohio 2010)(citing *State v. Davis*, 119 Ohio St.3d 422, 894 N.E.2d 1221, 1222 (2008)).

[111] *See, Spalla v. Foltz,* 788 F.2d 400, 405 (6th Cir, 1986); *see also, Duffel v. Dutton,* 785 F.2d 131, 136 (6th Cir. 1986)("A federal court must accept a state court's interpretation of that state's statutes and rules of practice.").

***2.  Ground One - claiming that Rios was denied due process and a fair trial by the trial court's admission of the expert testimony of Dr. Schlievert - should be denied after AEDPA review because the decision of the Ohio court on this issue was not contrary to the relevant  clearly established federal law.***

The clearly established federal law regarding when a habeas court may review evidentiary decisions of state courts teaches that the federal court may conduct such a review only to determine the ruling's consistency with due process,[112] and then only when that ruling was so egregious that it results in a denial of fundamental fairness.[113] The category of infractions that violate "fundamental fairness" is defined "very narrowly,"and includes only such state evidentiary rulings that "offend some principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental."[114]

Rios contends here that because Dr. Schlievert at trial characterized his conclusions as to what happened to the victim C.N. as a "diagnosis" of sexual abuse rather than as his expert "opinion," the admission of such testimony prevented Rios from having a fair trial.

Without framing the question in terms of the relevant federal law, or even acknowledging that law, the Ohio appeals court addressed the claim as follows:[115]

> {¶ 11}  * * * In his first assignment of error, appellant maintains that the trial court erred in permitting Dr. Schlievert to testify

---

[112] *Coleman v. Mitchell,* 268 F.3d 417, 439 (6th Cir. 2001)(citation omitted).

[113] *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)(citations omitted).

[114] *Id.* (citations omitted).

[115] ECF #8-1, Attachment at 2.

that following his examination of C.N. and a review of her records, he diagnosed her to have been sexually abused. Appellant maintains that the physician's "diagnosis" was not an opinion as may be rendered by expert testimony and that Dr. Schlievert had insufficient data to either make a diagnosis of sexual abuse or render an opinion that C.N. had been sexually abused.

{¶ 12} At trial Dr. Schlievert presented his credentials and testified that he had testified as an expert in the field of pediatric abuse multiple times in Ohio and Michigan courts. He was qualified as an expert in this case without objection.

{¶13} During cross-examination, the physician sparred with appellant's trial counsel over whether Dr. Schlievert's assessment that C.N. was sexually abused was an opinion or diagnosis. The physician insisted that as a result of his evaluation was a diagnosis: "Diagnosis is what we do." Appellant's trial counsel characterized the physician's statement as "just a diagnosis."

* * * *

{¶ 15} Appellant concedes that expert medical testimony is no longer a inadmissable simply because it is not stated to a reasonable degree of medical certainty. *State v. D'Ambrosio*, **67** Ohio St.3d 185, 191, 616 N.E.2d 909 (1993). It is sufficient if the testimony is in terms of possibility. *Id.* According to appellant, Dr. Schlievert's testimony "was not based upon medical certainty, probability or possibility. He refused to use any of those words to describe his diagnosis." Because of this, appellant maintains, the trial court should have not permitted admission of this testimony. Alternatively, appellant asserts that because Dr. Schlievert himself found no physical evidence of rape, there was insufficient foundation for his testimony and it should have been stricken.

{¶ 16} A trial court is vested with broad discretion concerning the admission of evidence and its rulings on such matters will not be disturbed absent an abuse of that discretion. *State v. Valsadi*, 6th Dist. Wood No. WD-09-064, 2010-Ohio-5030, ¶

40. An abuse of discretion is more than an error in judgment or mistake of law, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 17} We decline appellant's invitation to impose a set of magic words that qualify an experts's testimony for admission. While Dr. Schlievert characterized his conclusion as a diagnosis rather than opinion, this is a distinction without difference in this context. Moreover, although the physician failed to use the words medical certainty, probability or possibility, taking his testimony as a whole, there is little doubt that he held his conclusion with considerable certitude.

As the Ohio appeals court made clear, Ohio law permits experts to testify in terms of possibility rather than in terms of a reasonable scientific certainty or probability. Thus, questions about the certainty of the scientific results are matters of weight for the jury.[116]

In this matter, and as the Ohio court found, Dr. Schlievert based his testimony about what occurred to C.N. on his interview with the victim, and on his examination of the victim, which were then evaluated within the context of Dr. Schlievert's experience, education and training. Thus, his testimony, regardless of the terms he used to describe it, was his expert medical opinion, which the jury was then free to consider and weigh as they saw fit.

In applying Ohio law, the Ohio appeals court's decision not to disqualify Dr. Schlievert's testimony because he did not use the magic word "opinion" but referred to it as a "diagnosis" was a reasonable application of Ohio's evidentiary law stated above as articulated by the Supreme Court of Ohio. Moreover, because this decision was not contrary

---

[116] *State v. Lang*, 129 Ohio St.3d 512, 524 (2011)(citations omitted).

-23-

to the clearly established federal law on state court evidentiary rulings, also presented above,

I recommend that Ground One should be denied on the merits for the reasons stated.


**3. Ground Two - alleging that due process was violated when Dr. Schlievert purportedly vouched for the credibility of the victim - should be denied on the merits because the decision of the Ohio court on this matter was not contrary to the clearly established relevant federal law.**


As is well-settled, Ohio law prohibits an expert from offering an opinion as to the truthfulness of a child's statements.[117] But, as I discussed in some detail in *Liddle v. Brunsman*,[118] Ohio law is careful to distinguish between prohibited testimony such as directly stating that the child is truthful because he does not appear to be programmed or rehearsed, and expert testimony as to the ultimate issue of whether abuse occurred.[119] Thus, an expert in Ohio may not testify that abuse occurred based solely on crediting the accounts of the child victim, but an expert may testify that abuse occurred, even without physical evidence of abuse, if that opinion is based on the expert's educated observations of the child, and all the other data before the expert, which tend to show the presence of abuse.[120]

---

[117] *State v. Boston*, 46 Ohio St.3d 108 (1989).

[118] *Liddle v. Brunsman*, 2010 WL 4818527 (N.D. Ohio 2010, Baughman, MJ)(Report and Recommendation); *Liddle v. Brunsman*, 2010 WL 4818522 (N.D. Ohio, Gwin, J)(Order and Opinion adopting the Report and Recommendation).

[119] *Liddle,* 2010 WL 4818527, at *9 (citing *State v. Stowers*, 81 Ohio St.3d 260 (1998)).

[120] *Id.*

The state court analyzed this claim as follows:[121]

> {¶25} In the present matter, notably absent from Dr. Schlievert's testimony was any specific indicia that he believed C.N. to be truthful. It is the usurpation by an expert of the fact finder's role in determining the veracity and credibility of witnesses that makes introduction of an expert's opinion of a child's truthfulness improper. *Boston* at 128-129, 545 N.E.2d 1220.

> {26} Equally salient, although appellant seeks to minimize its importance, is Dr. Schlievert's testimony that he did not rely solely on C.N.'s statements in reaching his diagnosis. The physician testified that he considered not only C.N.'s medical interview and physical examination, but other information provided by professionals and caregivers, as well as the child's behavior and demeanor. His report, which was introduced into evidence, references information from the children's services referral and consideration of the evaluation for vaginal bleed at the emergency room. From his testimony, it is clear that, unlike with the opinion of the expert in *Burrell*, Dr. Schlievert's diagnosis was based on such a diversity of data that it could not be inferentially viewed as an assessment of C.N.'s veracity * * *.

Here, the appeals court expressly noted that "notably absent from Dr. Schlievert's testimony was any specific indicia that he believed C.N. to be truthful."[122] Further, that court also observed that Dr. Schlievert testified that he "did not solely rely on C.N.'s statements in reaching his diagnosis [that C.N. had been abused.]" Rather, the Ohio court found, Dr. Schlievert testified that "he considered not only C.N.'s medical interview and physical

---

[121] ECF #8-1, Attachment at 3.

[122] ECF # 7, Attachment at 23.

examination, but other information provided by professionals and caregivers, as well as the child's behavior and demeanor."[123]

The Ohio appeals court's reasoning closely tracks the analysis set forth in Ohio law as to when an expert may testify as to the presence of abuse. The court carefully noted that Dr. Schlievert's opinion was not exclusively based on the victim's statements, which would have been impermissible vouching for the credibility of the victim, but was instead based on Dr. Schlievert's physical examination of C.N., as well as on information developed from other professionals who dealt with C.N., and on C.N.'s "behavior and demeanor," as interpreted by Dr. Schlievert in light of his own professional education and experience.

The Ohio appeals court concluded that the trial court did not abuse its discretion in admitting Dr. Schlievert's testimony under the relevant Ohio law - a conclusion the federal habeas court must accept.[124] In the context of the present petition, the appellate court's decision to affirm the ruling of the trial court was not contrary to clearly established federal law, which only presents a federal question on the admission of evidence if the decision to admit was in violation of state law and was so egregious that the petitioner was denied a fundamentally fair trial.[125]  Here, the decision to admit was not violative of Ohio law, and, as the reasoning of the state court makes clear, was done in furtherance of assisting the jury with the issue of whether abuse occurred.

---

[123] *Id.*

[124] *Bey v. Begley*, 500 F.3d 514, 519 (6th Cir. 2007).

[125] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Dr. Schlievert was subject to cross-examination, and the jury was ultimately responsible for deciding how much weight to give to his testimony. In addition, as the state court observed, Dr. Schlievert's characterization of his findings as a "diagnosis" rather than as an "opinion" is a "distinction without a difference," and that regardless of his failure to use words like medical certainty or probability, "there is little doubt that he held his conclusion with considerable certainty."[126]

Accordingly, ground two should be denied here because the state court's ruling is not contrary to the clearly established federal law of *Estelle*.

### 4. Ground Three - the admission of purportedly hearsay statements from the female victim - should be dismissed as procedurally defaulted because the decision of the state court that Rios waived this issue by failing to make a contemporaneously object to this testimony at trial.

The Ohio appeals court expressly noted that Rios failed to object to this testimony about hearsay statements from the female victim  at trial, and that such a failure waives any review of the claims by the appeals court, except for plain error review.[127]

Ohio's contemporaneous objection rule states that an appellant waives any alleged error that was not contemporaneously objected to at trial.[128] That rule is recognized as an adequate and independent state law ground by which to foreclose federal habeas review.[129]

---

[126] ECF # 7, Attachment at 2.

[127] *Id*. at 4

[128] *Osborne v. Ohio*, 495 U.S. 103, 124 (1990).

[129] *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6ᵗʰ Cir. 2012).

Further, that the Ohio court undertook a plain error review does not overcome the procedural default based on the contemporaneous objection rule.[130]  Finally, Rios has not advanced any cause for the failure to make a contemporaneous objection, or shown prejudice from the federal court failing to consider this claim. Also, Rios has not shown actual innocence based on new evidence not available at trial.

Therefore, ground three should be dismissed as procedurally defaulted.

## Conclusion

For the reasons stated, I recommend that the *pro se* petition of Steven Rios be dismissed in part and denied in part as is more fully set forth above.

Dated: January 29, 2016                    s/ William H. Baughman, Jr.
                                           United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[131]

---

[130] *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000)(citation omitted).

[131] *See Thomas v. Arn*, 474 U.S. 140 (1985); *see*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).